IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA/
SOUTHERN DIVISION

| | |
|---|---|
| GINA PACE, | * |
| | * |
| Plaintiff, | * |
| v. | *     CASE NO. 15-269 |
| | * |
| MOBILE COUNTY BOARD OF | * |
| SCHOOL COMMISSIONERS and | * |
| CHERYL CHAPMAN, In Her Individual | * |
| Capacity, | * |
| Defendants. | * |

## AMENDED COMPLAINT

The Plaintiff now amends her previously filed complaint to more clearly set out her claims against the defendants, and the factual basis in support her claims.

### I

### INTRODUCTORY STATEMENT, JURISDICTION, AND VENUE

This is an action seeking principally declaratory and injunctive relief, compensatory and punitive damages, as well as attorney's fees, costs and other relief to redress intentional discrimination in employment characterized by the Defendants' suspension and termination of the Plaintiff based on her race, African American, despite the fact that the Defendants did not suspend and terminate Caucasian employees who have engaged in the same, similar or worse conduct; and

The Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by the Civil Rights Act of 1991; and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991, and made actionable through 42 U.S.C. Section 1983.

This Court has federal-question jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343. In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments.

1

II

**PARTIES**

1. The Plaintiff, Gina Pace, is an African-American female who served as a 5th-grade teacher at O'Rourke Elementary School in Mobile, Alabama, from August 2012 until November 2014, when she was suspended, and later terminated in or about February 2015.

2. The Defendant, Board of School Commissioners of Mobile County, Alabama, is the entity that govern and operates the public school system in Mobile County, Alabama. This Defendant, hereafter referred to as the School Board, employed the Plaintiff, and has more than 300 other full-time employees. Therefore, the School Board is a covered employer under Title VII of the Civil Rights Act of 1964, as amended.

3. Cheryl Chapman, at all times relevant to this complaint, served as Principal of O'Rourke Elementary School in Mobile County, Alabama, and was the discriminating official who unlawfully recommended the suspension and termination of the Plaintiff based on her race. Ms. Chapman is being sued in her individual capacity.

III

**FACTUAL ALLEGATIONS**

4. On November 13, 2014, the Defendant Board suspended Plaintiff on the recommendation of Defendant Chapman, who was the principal of elementary school where Plaintiff was employed.

5. At the time of the adverse actions, the Defendants did not give a reason for the suspension, stating that as a non-tenured teacher, the Plaintiff was not entitled to a specific reason for the Defendants' adverse employment decision. However, the Defendant Board's HR Director later showed Plaintiff a video of her holding/pulling a student by the arm as the Plaintiff escorted the student across the hall to another classroom for a disciplinary action referred to as a "Time Out."

6. Plaintiff alleges that the Defendants suspended her, even though she did not abuse or harm the student, and was never accused of such behavior.

7. The Defendants took the adverse employment action against Plaintiff without any notification to the student's parents or guardians. A clear indication that no harm or abuse occurred in state law requires parental notification when there is an allegation of child abuse.

8. Defendant Chapman recommended, and the Defendant School Board carried out the suspension of Plaintiff due to this act of alleged misconduct even though these defendants has not taken the same disciplinary actions against Caucasian teachers who have engaged in the same, similar, or much worse conduct.

9. Plaintiff was suspended allegedly because of the manner in which she removed a misbehaving student from her classroom to a classroom across the hall for placement in a disciplinary mode called "Time Out".

10. The Defendants treated Plaintiff differently than white teachers who have not only engaged in the same act, but much worse conduct by administering unauthorized corporal punishment, physically lifting a student off her feet to remove her from a classroom, and screaming very loudly at a student while the teacher's face is in very close proximity to the student's face, and shouting until the student is reduced to tears as in the mode of a marine drill sergeant.

11. One particular teacher, Ms. Pham, would threaten students on a regular basis with the "drill sergeant" type behavior. She would take misbehaving students into the restroom and shout at them at high volume while in very close proximity to the students' faces. Later, during her classroom time, she would threaten children with that type of punishment asking whether they wanted to see the dragon come out.

12. This behavior on the part of Ms. Pham was well known throughout the O'Rourke Elementary and was even discussed jokingly by Defendant Chapman during a data meeting.

13. There have also been other teachers who have actually dragged students down the hallway to the principal's office. One such teacher was Ms. Bowman. She had claimed that a particular student was misbehaving, but the student would not move in a cooperative manner.

14. Ms. Bowman continues to teach at O'Rourke Elementary, and did not suffer any disciplinary action despite Defendant Chapman having personal knowledge of her actions.

15. Mr. Pruna, a Caucasian PE teacher at O'Rourke Elementary, was given a 1-day leave without pay for lifting a misbehaving student into the air when the student would not walk as instructed. When Mr. Pruna lifted the child over his head the child was struggling trying to get away and during the process the child's pants came down exposing him to the other students. The student complained to his father, who in turn complained to Defendant Chapman, and she gave Mr. Pruna one day off without pay.

16. Upon information and belief, this same teacher had allegedly come to O'Rourke following a forced transfer from another Mobile County school due to an major act of misconduct with another teacher in an empty classroom.

17. All of these acts of misconduct, and more, were all well known to Defendant Chapman, but she failed to recommend the suspension or termination of any of the teachers involved.

18. Defendant Chapman would go to great lengths to avoid disciplining Caucasian teachers, and would minimize their misconduct and assist such teachers in justifying their actions. For example, on one occasion when a Caucasian teacher was escorting/pulling/dragging a student to the office, the teacher was bitten by the student. Following which, Defendant Chapman encouraged the teacher to file criminal charges against the 3rd grader. No discussion or consideration was focused on why the teacher was "handling" the child in such a way that resulted in the biting incident.

19. Plaintiff's suspension and later termination came during the third year of her employment with the Mobile County School System, meaning she would have been eligible for tenure

4

but for the termination decision.

20.  Prior to her November 2014 suspension, Plaintiff had never been disciplined during her teaching career, and had been an award-winning educator who was known as an effective teacher.

21.  Plaintiff was one of only two African-American teachers at O'Rourke Elementary School at the time of her termination, and Plaintiff contends that this school has never had more than 3 African-American teachers at any given time out of staff of 65 teachers.

22.  Following her suspension, Plaintiff was replaced by white teacher, alleges that the Defendants' suspension and later termination of her employment was disparate discipline on the basis of race and was unlawful under federal anti-discrimination laws.

## IV

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23.  The Plaintiff filed a charge of discrimination against the Defendant School Board with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory action, and received her Notice of Rights, commonly known as a Notice of Right-to-Sue. Plaintiff has now filed this action within 90 days of receiving that Notice of Rights, and has therefore, exhausted her administrative remedies.

## V.

## CAUSES OF ACTION

### Count I - TITLE VII VIOLATION

The Defendant School Board have violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, by suspending and terminating the Plaintiff for reasons that do not result in the suspension and termination of Caucasian teachers who have committed the same, similar or more serious infractions.

### Count II - VIOLATION OF 42 USC 1981 – School Board

The intentional adverse employment action taken by the Defendant School Board against the Plaintiff due to her race violate the anti-discrimination provisions of 42 USC Section 1981, as amended, and made actionable by 42 U.S.C. Section 1983.

### Count III - VIOLATION OF 42 USC 1981 – Individual Defendant

The intentional adverse employment action taken by Defendant Cheryl Chapman against the Plaintiff due to her race violate the anti-discrimination provisions of 42 USC Section 1981, as amended, and made actionable by 42 U.S.C. Section 1983.

## VI

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(a)  A declaratory judgment that the Defendant School Board has discriminated against Plaintiff on the basis of her race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991;

(b) A declaratory judgment that the Defendant School Board has violate the anti-discrimination provisions of 42 U.S.C. Section 1981, made actionable by 42 U.S.C. Section 1983;

(c) A declaratory judgment that Defendant Chapman has violate the anti-discrimination provisions of 42 U.S.C. Section 1981, made actionable by 42 U.S.C. Section 1983;

(d)  Order the reinstatement of the Plaintiff with full back pay and benefits;

(e)  Award Plaintiff $500,000.00 as compensatory damages;

(f)  Award Plaintiff her costs and expenses incurred in bringing this action, including a reasonable attorney's fees; and such other relief as the court may deem just and proper.

**TRIAL BY JURY REQUESTED**.

              Respectfully submitted,

              s/Ronnie L. Williams
              Law Office of Ronnie L. Williams (WILLR6024)
              Attorneys for Plaintiff Gina Pace
              St. Francis Street
              Mobile, Alabama  36602
              Tel: (251) 432-6985, Fax: (251) 432-6987
              rwilliams@williams-llc.com

### CERTIFICATE OF SERVICE

  The undersigned, by affixing his signature below, certifies that he has served a copy of this Amended Complaint on counsel for the defendants, by use of the Courts CM/ECF system, on this 24th day of August 2015, as follows:

Emily C.Marks, Esq.
emarks@ball-ball.com

K.Paul Carbo, Jr.
paul.carbo@atchisonlaw.com

              s/Ronnie L. Williams

7